**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Judith Shephard, individually and on behalf of all others similarly situated, | 7:21-cv-05241 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Affirm Holdings, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Affirm Holdings, Inc. ("defendant") markets, promotes and issues consumer credit products, *viz*, short-term installment loans, referred to as "Buy Now, Pay Later" ("BNPL"), through partnership with online or brick-and-mortar merchants ("Product").

2. Affirm is a reverse "layaway" plan, where a customer purchases something then makes multiple payments until it is paid off.

3. The ease with which consumers can access BNPL providers like Affirm encourages spending on items that otherwise could not be afforded.

4. A recent survey revealed that half of BNPL shoppers "increased their spending between 10 percent to over 40 percent when they use these plans compared with using a credit card."

5. Most users of BNPL services buy items such as trendy clothing and jewelry

6. Recent studies have shown that "installment payments are harder to track," which increases the chance consumers will fail to make payments on time.

7. BNPL providers like Affirm are unable to provide refunds for products which are

defective.

8. The result is that the customer will be forced to deal with the merchant, who has little incentive to refund money already received.

9. The consumer is required to continue to make payments on their loans, even after they have returned their item to the merchant.

10. This is a stark distinction from credit cards, which permit consumers to dispute purchases.

11. Affirm "claims an average 75 percent boost in order values across all its merchant partners."

12. Affirm touts itself as an alternative to "traditional" lenders like credit cards, payday loans and banks.

13. However, the interest rates charged through Affirm exceed most credit cards, without any of the protections of this regulated form of payment.

14. Affirm "is mainly targeting millennials and is hoping to fill the void left by this age group's mistrust of credit cards."

15. Most users finance an average purchase of $400 for nine months.

16. This means users will pay interest during the entire term of the loan, at an unfavorable APR.

17. A survey by Credit Karma and Qualtrics found that 40% of Americans used BNPL services, and 38% of this total have quickly fallen behind on their payments.

18. Affirm's use by plaintiff and class members has resulted in increased debt, higher interest, less transparency and reduced consumer protections.

Jurisdiction and Venue

19. This Court has jurisdiction because the parties are citizens of different states. 28 U.S.C. § 1332(d).

20. Plaintiff Judith Shephard is a citizen of New York.

21. Defendant Affirm Holdings, Inc. is a Delaware corporation with a principal place of business in San Francisco, San Francisco County, California.

22. The amount in controversy, including statutory and monetary damages, exceeds $5 million, exclusive of interest and costs.

23. Venue is proper because plaintiff resides in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

Parties

24. Plaintiff Judith Shephard is a citizen of West Haverstraw, Rockland County, New York.

25. Defendant Affirm Holdings, Inc., is a Delaware corporation with a principal place of business in San Francisco, California, San Francisco County.

26. Defendant is a provider of short-term installment loans through online and brick-and-mortar stores.

27. Plaintiff used the service within the statute of limitations for each cause of action alleged.

28. Plaintiff was harmed by the excessive fees and/or failure to protect her interests in any disputes or possible disputes with participating merchants.

29. Plaintiff chose between Affirm and a traditional credit card and would have purchased the items on a credit card, or not purchased them at all, but for Affirm's representations.

## Class Allegations

30. The class will consist of all New York citizens who used Affirm in New York during the statutes of limitations for each cause of action alleged.

31. Common questions of law or fact predominate and include whether defendant's representations and practices were and are misleading and if plaintiff and class members are entitled to damages.

32. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

33. Plaintiff is an adequate representative because her interests do not conflict with other members.

34. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

35. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

36. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

37. Plaintiff seeks class-wide injunctive relief because the practices continue.

## New York General Business Law ("GBL") §§ 349 & 350
### (Consumer Protection Statute)

38. Plaintiff incorporates by reference all preceding paragraphs.

39. Plaintiff and class members desired to use a product which was different, and less financially burdensome, than a traditional credit card.

40. Defendant's false and deceptive representations and omissions are material in that

they are likely to influence consumer purchasing decisions.

41. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

42. Plaintiff relied on the representations.

43. Plaintiff and class members would not have used the Product or paid as much if the true facts had been known, suffering damages.

### Negligent Misrepresentation

44. Defendant had a duty to truthfully represent the Product, which it breached.

45. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

46. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

47. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their use of the Product.

48. Plaintiff and class members would not have used the Product or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

49. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the

    undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary and statutory damages and interest pursuant to common law and statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: June 14, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com